UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE HENRY, | CASE NO. 5:14CV2615 |
| Plaintiff, | JUDGE DONALD C. NUGENT |
| v. | Magistrate Judge George J. Limbert |
| CAROLYN W. COLVIN[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Christine Henry ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI").  ECF Dkt. #1.  In her brief on the merits, filed on April 6, 2015, Plaintiff asserts that the administrative law judge ("ALJ") erred in her decision because: the ALJ's decision did not provide controlling weight to the opinion of Plaintiff's treating physicians; and the ALJ erred at Step Five of the Sequential Evaluation when evaluating Plaintiff's capability to work.  ECF Dkt. #14.

For the following reasons, the undersigned RECOMMENDS that the Court AFFIRM the ALJ's decision and dismiss the instant case with prejudice.

**I.  PROCEDURAL AND FACTUAL HISTORY**

On July 25, 2011, Plaintiff filed an application for SSI.  ECF Dkt. #11 ("Tr.") at 162.[2]  The Social Security Administration denied Plaintiff's application initially and upon reconsideration.  *Id.* at 79-107.  Plaintiff then requested a hearing before an ALJ, and her hearing was held on June 27, 2013.  *Id.* at 42-78.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]All citations to the Transcript refer to the page numbers assigned when the transcript was filed in the CM/ECI system rather than the page numbers assigned when the transcript was compiled.  This allows the Court to easily reference the Transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECI system.

On July 26, 2013, the ALJ denied Plaintiff's application for SSI. Tr. at 23-40. The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 25, 2011, the date of Plaintiff's application. *Id.* at 25. The ALJ determined that Plaintiff suffered from the following severe impairments: history of seizures; chronic obstructive pulmonary disease; fibromyalgia; irritable bowel syndrome; arthritis of the right hip; status-post sinus surgery; and degenerative disc disease of the spine with lumber radiculopathy. *Id.* Continuing, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that Plaintiff would need the ability to alter sitting and standing every hour as needed, but would be expected to be on task. *Id.* at 27. Additionally, when considering Plaintiff's RFC, the ALJ found that Plaintiff: could frequently push and pull; frequently handle and finger bilaterally; could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds; could occasionally bend, stoop, kneel, or crouch; must have no exposure to workplace hazards such as unprotected heights, moving mechanical parts, or the operation of a motor vehicle; and must avoid concentrated exposure to humidity, extreme hot or cold, and pulmonary irritants. *Id.*

Next, the ALJ determined that Plaintiff had no past relevant work, had at least a high school education, and that transferability of job skills was not an issue because Plaintiff had no past relevant work. Tr. at 34. Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 25, 2011, the date Plaintiff's application was filed. *Id.* at 35.

On November 30, 2014, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on April 6, 2015, asserting the following assignments of error:

    1.    The ALJ erred by not giving controlling weight to [Plaintiff's] treating rheumatologist and her family physician, instead substituting her own judgment for that of a rheumatologist and a family physician in medical matters beyond the ALJ's expertise.

    2.    The ALJ erred in finding that [Plaintiff] was able to perform light work, despite the testimony of the VE in response to the limitations set forth in the second and third hypothetical questions. He failed to meet his burden at Step Five of the Sequential Evaluation.

ECF Dkt. #14 at 15, 21. On June 5, 2015, Defendant filed a response brief. ECF Dkt. #16. Plaintiff filed a reply brief on June 18, 2015. ECF Dkt. #17.

## II. SUMMARY OF THE RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff suffered from a history of seizures, chronic obstructive pulmonary disease, fibromyalgia, irritable bowel syndrome, arthritis of the right hip, status-post sinus surgery, and degenerative disc disease of the spine with lumbar radiculopathy, and that these severe impairments imposed more than minimal limitations on Plaintiff's ability to perform basic work activities, therefore qualifying as severe under 20 C.F.R. § 416.920(c). Tr. at 25. Additionally, the ALJ determined that Plaintiff suffered from generalized anxiety disorder, gastroesophageal reflux disease, hyperlipidemia, and cubital tunnel syndrome of the left arm, and that these impairments did not have the necessary severity to have more than a minimal effect on Plaintiff's ability to perform basic work activities, or were not expected to last twelve month or more. *Id.*

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 26. In making this determination, the ALJ first considered Listing 1.04 and looked to see whether Plaintiff's degenerative disc disease showed evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. *Id.* The ALJ determined that there was no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, and that Plaintiff maintained a full range of motion in her lower extremities and was able to ambulate independently. *Id.* Next, the ALJ considered Listing 3.02 and 3.03 for chronic pulmonary insufficiency and asthma, respectively. *Id.* The ALJ considered the lung capacity functions described in Listing 3.02 and looked for evidence of chronic asthmatic bronchitis attacks as

described in Listing 3.03. The ALJ found no evidence of any pulmonary studies, and no evidence that Plaintiff suffered from the ailments described in Listing 3.03. Accordingly, the ALJ determined that Plaintiff did not meet Listing 3.02 or Listing 3.03. The ALJ then moved on to Listing 5.06A and B, which deal with inflammatory bowel disease. *Id.* When considering Listing 5.06A, the ALJ looked to see whether Plaintiff had an obstruction of stenotic areas in the small intestine or colon with proximal dilatation that were confirmed by appropriate medically acceptable imaging or in surgery, required hospitalization for intestinal decompression or for surgery, and occurred at least sixty days apart within a consecutive six-month period. *Id.* The ALJ indicates that she also considered whether Plaintiff exhibited any of the conditions enumerated in Listing 5.06B. *Id.* The ALJ then determined that Plaintiff did not meet Listing 5.06. *Id.* Finally, the ALJ indicated that she reviewed all Listings associated with pain in the joints, with specific emphasis on Listing 1.02A, major dysfunction of a joint, and Listing 11.14, peripheral neuropathies. *Id.* Regarding Listing 1.04A, the ALJ found that Plaintiff did not meet the Listing because there was no evidence of gross anatomical deformity or an inability to ambulate effectively. *Id.* The ALJ determined that Listing 11.14 was not met because there was no evidence that Plaintiff had the required disorganization of motor function described in the Listing. *Id.* at 26-27. The ALJ then concluded that Plaintiff did not meet any Listing. *Id.*

Following her determination that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except that Plaintiff would need the ability to alternate between sitting and standing every hour as needed, but would be expected to remain on task. Tr. at 27. Additionally, the ALJ determined that Plaintiff: could frequently handle and finger bilaterally; could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds, and could never crawl; could occasionally bend, stoop, kneel, or crouch; must have no exposure to workplace hazards such as unprotected heights, moving mechanical parts, or the operation of a motor vehicle; and must avoid concentrated expose to humidity, extreme hot or cold, and pulmonary irritants. *Id.*

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Tr. at 28. When providing her reasons for making the above determination regarding Plaintiff's credibility, the ALJ indicated that the record did not support a finding that Plaintiff's limitations were as severe as she alleged, Plaintiff had a relatively large range of activities in a normal day, and that there was evidence to suggest that Plaintiff's symptoms had seen improvement with medication and injections. *Id.* The ALJ further stated that there was little objective evidence of any mechanism that would produce the levels of pain described by Plaintiff, and that the medical evidence did not contain sufficient objective evidence to substantiate the severity of symptoms and degree of functional limitations claimed by Plaintiff regarding her alleged fibromyalgia, osteoarthritis, and degenerative disc disease of the lumbar spine. *Id.*

After a recitation of the relevant portions of the record, the ALJ stated that in addition to the general lack of objective evidence to support Plaintiff's subjective complaints, other considerations weighed against Plaintiff's overall credibility. Tr. at 31. The ALJ indicated that on a typical day, Plaintiff wakes up, makes coffee or tea, watches the news, showers, attempts exercises, stretches, helps her husband make dinner, and watches television. *Id.* Further, the ALJ stated that Plaintiff cares for her cat, including feeding the cat and cleaning the cat's litter, uses a computer to keep in touch with her daughter, and sometimes plays board games with her family. *Id.* Consequently, the ALJ determined that Plaintiff's daily activities are less limited than would be expected given Plaintiff's alleged impairments. *Id.* The ALJ also looked to the fact that Plaintiff continued to smoke cigarettes despite her impairments and continued recommendations from her treating physicians to quit smoking, and that Plaintiff's choice to continue smoking undermined her credibility regarding the severity of her impairments. *Id.* at 31-32.

The ALJ gave great weight to the opinion of state psychological consultant Sylvester Huston, Ph.D. Tr. at 32. Dr. Huston opined that Plaintiff had no limitation in her ability to relate to others, that Plaintiff's ability to understand, remember, and follow instructions would be consistent with individuals of average intellectual functional ability, and that Plaintiff's ability to maintain

concentration, persistence, and pace would only be "subjectively reduced." *Id.* Additionally, Dr. Huston opined that Plaintiff would have no limitations in her ability to withstand the stress and pressures of the workplace. *Id.*

Little weight was given to the opinion of Plaintiff's treating physician, Douglas Harley, D.O., because the ALJ determined that Dr. Harley's opinion demonstrated internal conflict and was inconsistent with treatment records. Tr. at 32-33. Dr. Harley opined that Plaintiff would be off task twenty-five percent or more of the workday and would miss more that four days per month due to her chronic pain and chronic obstructive pulmonary disease. *Id.* at 32. It was Dr. Harley's opinion that Plaintiff could only stand or walk for a total of two hours a day, and sit for a total of four hours a day. *Id.* Dr. Harley further opined that Plaintiff had severe psychological limitations that would severely limit her ability to follow instructions, concentrate, interact socially, and adapt to the workforce. *Id.* It was the ALJ's opinion that such limitations were not consistent with Dr. Harley's treatment notes because he pursued a relatively conservative course of treatment, and noted on several occasions that objective medical testing did not reveal mechanical sources of pain to explain Plaintiff's allegations of pain. *Id.* The ALJ also pointed to the fact that Dr. Harley, at one point in 2011, indicated that Plaintiff's quality of life was improving and that Plaintiff demonstrated improved ability to perform her activities of daily living. *Id.* Additionally, the ALJ found nothing in Dr. Harley's notes suggesting that Plaintiff had any mental limitations, Dr. Harley had never treated Plaintiff for mental health issues, and Dr. Harley often noted that Plaintiff had not felt depressed or expressed a lack of interest or pleasure when performing activities. *Id.* at 32-33. The ALJ indicated that certain aspects of Dr. Harley's opinion were consistent with the RFC determination made by the ALJ before affording little weight to Dr. Harley's opinion

The ALJ next discussed the opinion of treating rheumatologist Arminda Lumapas, M.D. Tr. at 33. The ALJ indicated that Dr. Lumapas opined that Plaintiff would be off task twenty-five percent or more of the workday, and would miss more than four days per month. *Id.* Additionally, the ALJ stated that Dr. Lumapas opined that Plaintiff could only stand or walk for a total of two hours a day, and sit for three to four hours a day. *Id.* Continuing, the ALJ determined that Dr. Lumapas' opinion was inconsistent with treatment notes because Plaintiff was treated in a

conservative manner and, at times, showed marked improvements in pain levels. *Id.* Accordingly, the ALJ provided little weight to Dr. Lumapas' opinion because the opinion demonstrated internal conflict and was inconsistent with Dr. Lumapas' treatment records. *Id.*

Next, the ALJ indicated that Plaintiff had no past relevant work. Tr. at 34. The ALJ indicated that Plaintiff was a younger individual between the ages of eighteen and forty-four, had at least a high school education, and that transferability of job skills was not an issue because Plaintiff had no past relevant work. *Id.* Continuing, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. *Id.* When making her determination, the ALJ heard the testimony of a vocational expert. *Id.* The vocational expert testified that Plaintiff could perform the requirements of representative occupations of sedentary, unskilled jobs such as addresser, order clerk, and polisher, and that such jobs existed in significant numbers in the national economy. *Id.* The ALJ found that the testimony of the vocational expert was consistent with the information contained in the *Dictionary of Occupational Titles*. *Id.* at 35. Based on the above, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since July 25, 2011, the date Plaintiff's application for SSI was filed. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

>     5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

-8-

## V. LAW AND ANALYSIS

### A. TREATING PHYSICIANS' OPINIONS

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.'" *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr.28, 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir.2004). Substantial evidence can be "less than a preponderance," but must be

adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir.2010) (citation omitted).

### i.     **Opinion of Dr. Harley**

The ALJ first addresses the opinion of Dr. Harley. Tr. at 32-33. Dr. Harley opined that Plaintiff would be off-task more than twenty-five percent of the day, and would miss more than four days per month. Tr. at 32. Further, Dr, Harley indicated that Plaintiff would be limited to standing or walking for only two hours per day, and sitting or standing for only four hours per day, effectively eliminating Plaintiff's ability to perform full-time work. *Id.* Dr. Harley also opined that Plaintiff had mental limitations that would severely limit her ability to follow instructions, concentrate, interact socially, and adapt to the workforce. *Id.* The ALJ determined that such limitations were not consistent with Dr. Harvey's treatment notes. *Id.*

When discussing the treatment relationship between Plaintiff and Dr. Harley, the ALJ indicates that Dr. Harley had prescribed Vicodin and Baclofen, which provided some relief for Plaintiff's irritable bowel syndrome. Tr. at 28-29. Dr. Harley also conducted an MRI of Plaintiff's brain, which was essentially normal. *Id.* at 29. Dr. Harley discussed Plaintiff's chronic obstructive pulmonary disease with her in September 2011, and recommend that she continue ordinary activity within appropriate limits and that she quit smoking. *Id.* at 31. In December 2011, Plaintiff visited Dr. Harley after losing forty pounds, and Dr. Harley ordered a CT scan of Plaintiff's abdomen. *Id.* at 30. There were no problems reported on the CT scan, and Plaintiff gained seven pounds by February 2012. *Id.* Dr. Harley also performed a CT scan of Plaintiff's heart in March 2012, which appeared normal. *Id.* at 29.

Plaintiff argues that the opinion of Dr. Harley was not inconsistent and did not demonstrate internal conflict, as determined by the ALJ. ECF Dkt. #14 at 20. Plaintiff indicates that Dr. Harley frequently identified tenderness at several areas on Plaintiff. *Id.* at 20-21. Plaintiff then contends that Dr. Harley's records clearly show that Plaintiff had fibromyalgia. *Id.* at 21. Finally, Plaintiff asserts that the ALJ erred in failing to give controlling weight to the opinion of Dr. Harley. *Id.*

Defendant contends that the ALJ did not err in determining that Dr. Harley's opinion was inconsistent with the record and contained internal conflicts. ECF Dkt. #16 at 10-12. In making her

-10-

argument, Defendant asserts that Dr. Harley pursued a conservative course of treatment and noted that Plaintiff's quality of life was improving in treatment notes made in 2011. *Id.* at 10. Defendant also asserts that Dr. Harley stated that Plaintiff's ability to perform her activities of daily living had improved. *Id.* Further, Defendant maintains that there was nothing in Dr. Harley's treatment notes to suggest that Plaintiff had mental limitations, and Dr. Harley never treated Plaintiff for a mental condition, instead often noting that Plaintiff did not feel depressed and did not lack interest or pleasure when performing activities. *Id.* Defendant also argues that the ALJ credited Dr. Harley's treatment notes insofar as those notes supported Dr. Harley's opinion, and acknowledged that Plaintiff had pain and recognized a significant reduction in Plaintiff's capacity to work. *Id.* at 11-12. For these reasons, Defendant maintains that the ALJ's decision was supported by substantial evidence and should be affirmed. *Id.* at 12.

In her reply, Plaintiff argues that Defendant is attempting to "play doctor" and substitute her opinion on medical matters beyond her expertise over the opinion of trained medical doctors. ECF Dkt. #17 at 2. Plaintiff also argues that there is no "aggressive" treatment for fibromyalgia, and thus Defendant's arguments regarding the conservative treatment of Plaintiff are without merit. *Id.* Further, Plaintiff argues that Defendant fails to address the fact that the ALJ did not discuss the factors of the treatment relationship, supportability of the opinion, consistency of the opinion with other opinions in the record, the record as a whole, and the treating physicians' medical specialization. *Id.* at 5. Plaintiff asserts that the ALJ agreed with Plaintiff's treating physicians that Plaintiff had some level of pain, but then chose to render her own medical opinion regarding the limitations caused by Plaintiff's pain, and thus engaged in the kind of behavior the treating physician rule prohibits. *Id.*

Plaintiff fails to demonstrate that the ALJ erred when providing little weight to the opinion of Dr. Harley. The ALJ discussed Plaintiff's treatment with Dr. Harley, as described above, and found that Dr. Harley's opinion, effectively indicating that Plaintiff would be unable to perform any full-time job, was not consistent with Dr. Harley's treatment notes. The ALJ's decision was supported by substantial evidence, and when substantial evidence supports the ALJ's denial of benefits the ALJ's decision must be affirmed. *See Cole,* 661 F.3d at 931. When making her

-11-

determination, the ALJ indicated that Dr. Harley pursued a relatively conservative course of treatment and noted on several occasions that Plaintiff's medical testing did not reveal mechanical sources of pain to explain Plaintiff's allegations of pain. Tr. at 32. Although Plaintiff states that there is no aggressive treatment for fibromyalgia, Plaintiff provides no citation for this assertion and fails to explain how there is not a spectrum of treatment options for fibromyalgia. The ALJ also indicated that Dr. Harley stated that Plaintiff's quality of life was improving and that Plaintiff demonstrated improved abilities to perform activities of daily living. *Id.* Continuing, the ALJ found nothing in the record suggesting that Plaintiff suffered from mental limitations, or that Dr. Harley treated Plaintiff for any mental condition. *Id.* at 32-33. Further, the ALJ addressed the portions of Dr. Harley's opinion that were consistent with the RFC determination. *Id.* at 33.

Accordingly, the ALJ supported her decision with substantial evidence and thus falls within the "zone of choice" in which the ALJ can operate without the fear of court interference. *See Buxton*, 246 F.3d at 773. The ALJ provided substantial evidence regarding her decision to afford little weight to the opinion of Dr. Harley in support of her decision to deny benefits, and thus her decision must be affirmed.

### ii.     **Opinion of Dr. Lumapas**

Plaintiff argues that the ALJ erred by not giving controlling weight to the opinion of Plaintiff's treating rheumatologist, Dr. Lumapas, and instead substituted her own judgments for the judgments of Dr. Lumapas in medical matters beyond the ALJ's expertise. ECF Dkt. #14 at 14-15. Plaintiff claims that the ALJ essentially ignored her fibromyalgia. *Id.* at 15-16. Regarding fibromyalgia, Plaintiff asserts that a lack of objective evidence of fibromyalgia is understandable and consistent with the disease because fibromyalgia is elusive and mysterious. *Id.* at 16. Plaintiff indicates that there is no cure for fibromyalgia and its symptoms are completely subjective. *Id.* Further, Plaintiff asserts that there are no laboratory tests for fibromyalgia, and the main symptoms are pain all over, fatigue, disturbed sleep, stiffness, and multiple tender spots - more specifically, eighteen fixed locations on the body that cause the patient to flinch when firmly pressed. *Id.* at 16-17. Plaintiff also asserts that medical reports showing normal strength and range of motion are consistent with a diagnosis of fibromyalgia, and recognizes that a diagnosis of fibromyalgia does

not necessarily mean that a claim of disabling pain must be accepted. *Id.* at 17 (citing *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996); *Tsarelka v. Sec. of Health & Human Srvs*, 842 F.2d 529, 534 (1st Cir. 1988)).

Plaintiff argues that the ALJ may not substitute her own medical judgment for that of a treating physician where the opinion of the treating physician is supported by the medical evidence. ECF Dkt. #14 at 17-18 (citing *Boulis-Gasche v. Comm'r Soc. Sec.*, No. 10-5446, 2011 WL 3677972 (6th Cit. 2011); *Schmidt v. Sullivan*, 914 F.2d 117 (7th Cir. 1990); *Diack v. Colvin,* No. 1:12-CV-02513, 2013 WL 3822294 (N.D. Ohio July 23, 2013); *Harmon v. Astrue*, No. 5:09CV2765, 2011 WL 834138 (N.D. Ohio Feb. 8, 2011), *adopted*, 2011 WL 825710 (N.D. Ohio Mar. 4, 2011)). Plaintiff correctly asserts that the ALJ did not provide controlling weight to Dr. Lumapas' opinion because the opinion showed internal conflict and inconsistency with treatment records. ECF Dkt. #14 at 18. Plaintiff argues that there is no inconsistency because Dr. Lumapas identified fibromyalgia during Plaintiff's first appointment in May 2011. Continuing, Plaintiff indicates that Dr. Lumapas' August 24, 2011 follow-up patient notes indicate that Plaintiff was unable to do Tai Chi because of balance problems and lower back pain and tenderness. *Id.* at 18-19. On October 6, 2011, Plaintiff complained of 10/10 pain and the presence of tremors with tenderness at all eighteen points. *Id.* at 19. In January 2012, Plaintiff was again noted to be tender at all eighteen points. *Id.* Plaintiff was tender at all eighteen points during November 2012 and March 2013 visits, and experienced some degree of tenderness during all appointments during this time period. *Id.* Further, Plaintiff indicates that during a July 2012 appointment she suffered from fatigue, depression, anxiety, headache, and cold intolerance. *Id.* Finally, Plaintiff asserts that discounting the opinion of Dr. Lumapas, a treating source, in favor of the opinion of a state agency consultant was not consistent with the regulations imposed in the Social Security Act. *Id.* at 21.

Defendant contends that the ALJ reasonably gave little weight to Dr. Lumapas' opinion because it was inconsistent with treatment notes. ECF Dkt. #16 at 8. Defendant indicates that in May 2011, Dr. Lumapas began treating Plaintiff with low dosages of Cymbalta, and recommended that Plaintiff participate in meditation, Tai Chi, and acupuncture. *Id.* Continuing, Defendant discusses Plaintiff's indication in August 2012 that she was still achy, but felt that her "electrical

zingers" had improved and that she no longer was experiencing shooting pains. *Id.* Defendant also indicates that Plaintiff had full strength in all of her extremities while undergoing treatment, despite continuing to report pain. *Id.* at 9. Defendant notes that Dr. Lumapas never placed significant restrictions on Plaintiff's ability to sit, stand, or walk. *Id.* Further, Defendant contends that Plaintiff's fibromyalgia diagnosis alone is insufficient evidence to support Dr. Lumapas' opinion because a diagnosis says nothing about the severity of the symptoms. *Id.* Finally, Defendant asserts that the ALJ did not ignore Plaintiff's complaints, but rather recognized that Plaintiff reported pain, and, as a result, significantly reduced Plaintiff's capacity to work, and based on the record as a whole, the ALJ properly determined that Plaintiff could only perform a highly restricted range of sedentary work with several postural and environmental limitations to address Plaintiff's complaints of pain. *Id.* at 9-10.

Plaintiff's reply responds to Defendant's arguments regarding the weight provided to the opinions of Dr. Harley and Dr. Lumapas in the same manner, and Plaintiff agrees with Defendant that the opinions of Dr. Harley and Dr. Lumapas are substantially similar. ECF Dkt. #17 at 3. Accordingly, Plaintiff asserts the same arguments in her reply regarding Dr. Lumapas' opinion as were discussed above in the context of Dr. Harley's opinion.

Plaintiff's arguments are not well taken. First, the ALJ did conduct a reasonably lengthy review of the record leading up to the discussion of Dr. Lumapas' opinion. Tr. at 27-33. During this discussion, the ALJ did address the treatment relationship between Plaintiff and Dr. Lumapas by repeatedly referencing the record when discussing Plaintiff's appointments with Dr. Lumapas. *Id.* at 29. While the ALJ could have gone into greater depth regarding her decision making process regarding the supportability of Dr. Lumapas' opinion, she did point out that the Dr. Lumapas' treatments were not radical - for example, recommending meditation and Tai Chi as treatments - and noted that Dr. Lumapas indicated that Plaintiff reported marked improvements during office visits. *Id.* at 33. The ALJ also previously discussed Plaintiff's progress with Dr. Lumapas, and this discussion must be considered when determining whether the ALJ erred regarding her decision not to provide controlling weight to Dr. Lumapas' opinion indicating that Plaintiff would be off task for twenty-five percent or more of the workday, miss more than four days a month, and would be unable

-14-

to even work an eight-hour day due to sitting and standing restrictions. *Id.* The ALJ first noted that Plaintiff was only prescribed a low does of Cymbalta by Dr. Lumapas, in combination with meditation, Tai Chi, and acupuncture therapies, at the outset of her treatment with Dr. Lumapas. *Id.* at 29. These treatments, along with treatment at a pain clinic, were successful in reducing Plaintiff's pain level, however, Plaintiff was discharged from the pain clinic after a second offense of having THC present in her urine during a drug screen. *Id.* The ALJ notes that Dr. Lumapas increased Plaintiff's Cymbalta dosage approximately three months after treatment began, and Plaintiff indicated that her "electrical zingers" had improved, she no longer experienced shooting pains, and that she reported achiness, but did not know whether the achiness resulted from her inability to relax. *Id.* At some point Plaintiff was prescribed gabapentin. *Id.* The ALJ indicated that in November 2012, Dr. Lumapas increased Plaintiff's dosage of gabapentin and prescribed Buspar. *Id.* In January 2013, Plaintiff indicated that she had reverted back to her previous dose of gabapentin. *Id.* During the January 2013 visit, Plaintiff complained of left arm pain, and Dr. Lumapas gave her an injection for the pain. *Id.*

The ALJ's conclusion is supported by "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion that Dr. Lumapas' opinion should be provided little weight. *Cole*, 661 F.3d 937 (internal citations omitted). The above described treatment does not automatically lead to the ALJ having to accept Dr. Lumapas' opinion. Substantial evidence supports the ALJ's determination that Dr. Lumapas' opinion, which essentially indicated that Plaintiff would be unable to work any full-time job because of sitting and standing restrictions, let alone maintain employment due an inability to remain on task and absenteeism, demonstrates internal conflict and is inconsistent with treatment records. Plaintiff's assertions that her fibromyalgia completely prohibits employment are not supported by the record. When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found Plaintiff disabled. Accordingly, even if the undersigned were to accept Plaintiff's arguments that her fibromyalgia prohibited employment, the ALJ's decision is based on substantial evidence, and must be affirmed.

### B. VOCATIONAL EXPERT'S TESTIMONY

Plaintiff also argues that the ALJ erred in finding that Plaintiff was able to perform light work, despite the testimony of the vocational expert in response to the limitations set forth in the second and third hypothetical questions, and that the ALJ failed to meet her burden at Step Five of the Sequential Evaluation. ECF Dkt. #14 at 22.

In her brief on the merits, Plaintiff asserts that in the ALJ's second hypothetical question she posited a hypothetical individual who could do light work, with some limitations as identified in the first hypothetical question, and this individual would be likely to miss two days of work per month. ECF Dkt. #14 at 22. The vocational expert responded to this question by stating that no jobs would be available for an individual with the type of absenteeism indicated in the second hypothetical question. *Id.* The vocational expert also testified that no jobs would be available for an individual that would have problems maintaining regular attendance and being punctual within customary tolerances twenty percent of the time. *Id.*

Plaintiff contends that the opinion of Dr. Harley and Dr. Lumapas indicate that Plaintiff would be off task more than twenty-five percent of the time and would miss at least four days of work per month. ECF Dkt. #14 at 22. Continuing, Plaintiff asserts that the opinion of Dr. Huston, the state psychological consultant, should not have been relied upon because that opinion ran contrary to the opinions of Plaintiff's treating sources. *Id.* Finally, Plaintiff argues that the ALJ failed to rely on an hypothetical question that accurately reflected Plaintiff's limitations because the hypothetical question that was posited did not accurately reflect Plaintiff's inability to maintain a regular schedule. *Id.* at 23.

Defendant claims that Plaintiff's argument is essentially an extension of her arguments regarding the treating physician rule, namely, that the ALJ should have given greater weight to the restrictions imposed by the Plaintiff's treating sources. ECF Dkt. #16 at 13. Continuing, Defendant argues that the ALJ was not required to adopt the vocational expert's testimony in response to a hypothetical question positing restrictions relying on the opinions of Dr. Harley and Dr. Lumapas because the ALJ properly gave little weight to the opinions. *Id.*

Plaintiff did not raise any additional arguments as to the testimony of the vocational expert in her reply brief and instead focused on the treating physician issue. ECF Dkt. #17. These arguments are addressed above and need not be revisited here.

Defendant is correct in asserting that Plaintiff's arguments as to the testimony of the vocational expert are premised on the conclusion that the ALJ improperly weighed the opinions of Dr. Harley and Dr. Lumapas. If the ALJ properly weighed the opinions of Dr. Harley and Dr. Lumapas in her decision, it would be inconsistent for the ALJ to then make a decision regarding the testimony of the vocational expert relying on those opinions. The ALJ made her decision that the assertions regarding Plaintiff's ability to remain on-task, be present for work, and limitations regarding sitting and standing contained in the opinions of Dr. Harley and Dr. Lumapas were inconsistent and contrary to the record. As discussed above, the ALJ's decision was based on substantial evidence. Accordingly, the ALJ was not required to adopt the vocational expert's testimony that included limitations that were consistent with the opinions of Dr. Harley and Dr. Lumapas, but inconsistent with the ALJ's determination regarding the opinions of Dr. Harley and Dr. Lumapas.

## VI. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS the instant case with prejudice.

DATE: December 30, 2015         /s/George J. Limbert
                                GEORGE J. LIMBERT
                                UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).